

FILED by _____ D.C.
INTAKE

JAN 25 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. LAUD.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____ -Civ- **08-60111** CIV-GRAHAM

MAGISTRATE JUDGE
O'SULLIVAN

| | |
|---|---|
| ROBERT D. DANCE, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | DEMAND FOR JURY TRIAL |
| LEVITT CORP., ALAN B. LEVAN and GEORGE P. SCANLON, ) ) ) | |
| Defendants. ) ) ) | |

CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

Plaintiff has alleged the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Levitt Corp. ("Levitt" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of purchasers of the common stock of Levitt between January 31, 2007 and August 14, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).  Many of the acts charged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.

Case No. _____ -Civ-_____

5.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.     Plaintiff Robert D. Dance, as set forth in the accompanying certification and incorporated by reference herein, purchased the common stock of Levitt during the Class Period and has been damaged thereby.

7.     Defendant Levitt, together with its subsidiaries, operates as a homebuilding and real estate development company in the southeastern United States.

8.     (a)     Defendant Alan B. Levan ("Levan") is and, at all relevant times, was the Chairman and Chief Executive Officer ("CEO") of Levitt. Defendant Levan is also the Chairman and CEO of BankAtlantic Bancorp ("BankAtlantic") and the Chairman and CEO of BFC Financial Corp ("BFC").

(b)     Defendant George P. Scanlon ("Scanlon") is, and was at all relevant times, Chief Financial Officer ("CFO") and Executive Vice President of Levitt.

(c)     Defendants Levan and Scanlon are collectively referred to herein as the "Individual Defendants."

9.     During the Class Period, the Individual Defendants, as senior executive officers and/or directors of Levitt, were privy to confidential and proprietary information concerning Levitt, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning Levitt, as discussed in detail below. Because of their positions with Levitt, the Individual Defendants had

- 2 -

Case No. _____ -Civ- _____

access to non-public information about its business, finances, products, markets and present and

future business prospects via access to internal corporate documents, conversations and connections

with other corporate officers and employees, attendance at management and/or board of directors

meetings and committees thereof, and via reports and other information provided to them in

connection therewith. Because of their possession of such information, the Individual Defendants

knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and

were being concealed from, the investing public.

10.     The Individual Defendants are liable as direct participants in the wrongs complained

of herein.  In addition, the Individual Defendants, by reason of their status as senior executive

officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the

Exchange Act and had the power and influence to cause the Company to engage in the unlawful

conduct complained of herein. Because of their positions of control, the Individual Defendants were

able to and did, directly or indirectly, control the conduct of Levitt's business.

11.     The Individual Defendants, because of their positions with the Company, controlled

and/or possessed the authority to control the contents of its reports, press releases and presentations

to securities analysts and through them, to the investing public.  The Individual Defendants were

provided with copies of the Company's reports and press releases, alleged herein to be misleading,

prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or

cause them to be corrected.  Thus, the Individual Defendants had the opportunity to commit the

fraudulent acts alleged herein.

12.     As senior executive officers and/or directors and as controlling persons of a publicly

traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange

Case No. _____ -Civ-_____

Act, and was, and is, traded on the New York Stock Exchange ("NYSE") and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to Levitt's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of Levitt's common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

13.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct which operated as a fraud or deceit on purchasers of Levitt's common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Levitt's business, operations, management and the intrinsic value of Levitt's securities; and (ii) caused Plaintiff and members of the Class (defined below) to purchase Levitt's common stock at artificially inflated prices.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of Levitt between January 31, 2007 and August 14, 2007, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

Case No. _____ -Civ- _____

15.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Levitt common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Levitt or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

16.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

17.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

18.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Levitt;

(c)    whether the price of Levitt common stock was artificially inflated during the Class Period; and

Case No. _____ -Civ-_____

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

19.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

20.     Defendant Levitt, together with its subsidiaries, operates as a homebuilding and real estate development company in the southeastern United States. Levitt is the parent company of wholly-owned subsidiaries, Levitt and Sons, LLC ("Levitt and Sons") and Core Communities. Levitt and Sons is best known for developing and building New York's Levittown, Long Island.

21.     The Class Period begins on January 31, 2007. On that date, Levitt issued a press release announcing that it agreed to merge with BFC. As part of the agreement, BFC agreed to pay 2.27 shares of BFC stock for each share of Levitt stock. Based on BFC stock's closing price on the previous trading day, the proposed transaction valued Levitt stock at $14.41 per share - a premium of 32 percent over the closing price of $10.88 per share on the previous trading day. Defendant Levan, commenting on the merger, stated, in pertinent part, as follows:

> This merger is a win-win situation for both Levitt and BFC. This tax-free transaction is intended to provide Levitt shareholders a significant market premium, while preserving their opportunity to participate in any future home building recovery. This transaction also provides Levitt additional strength and resources during a very challenging time. BFC, in turn, increases its investment in a company with a tremendous past and a bright long term future when the housing markets return to favor. It is a key addition to our portfolio of growth companies.

- 6 -

Case No. _____ -Civ-_____

22.    Also, on January 31, 2007, Levitt issued a press release announcing its preliminary

financial results for the fourth quarter and year end of 2006, the period ended December 31, 2006.

For the quarter, the Company reported revenues at its Homebuilding Division of $143.6 million.

With regard to the Company's financial results, the press release continued, in pertinent part, as

follows:

> In Levitt's Homebuilding Division, revenues from home sales for the fourth quarter
> were $143.6 million and there were 426 homes delivered in the period with a margin
> of 19.6% (margin percentage defined as sales of real estate minus cost of sales of real
> estate divided by sales of real estate). Backlog at December 31, 2006 was 1,248
> units with a sales value of $438.2 million. New home orders totaled 204 in the
> quarter, but 122 cancellations resulted in net home orders of 82. Separately, the
> Company has entered into sales contracts to dispose of certain properties and is
> expected to realize a pre-tax loss of $9.0 million upon disposition, and will write-off
> $1.4 million in pre-acquisition costs for properties which will not be acquired. These
> charges will be included in the final fourth quarter results. In addition, the Company
> is currently evaluating its homebuilding projects to determine the need for any
> additional impairment reserve. Since the work is not yet completed, the Company is
> unable to provide an estimate of any additional required reserve at this time.
>
> In Levitt's Land Division, revenues for the fourth quarter were $43.7 million realized
> from the sale of 238 acres at a margin of 34.2%. Included in the revenue is an
> intercompany transaction with Levitt and Sons of $15.4 million with a 29.7% margin
> covering 150 acres. Backlog at December 31, 2006 consisted of 386 acres with a
> sales value of $60.1 million.

23.    In response to the Company's announcements regarding its merger with BFC and its

2006 fourth quarter financial results, on January 31, 2007, the price of Levitt common stock rose

$3.28 per share, or 30%, to close at $14.14 per share, on heavy trading volume.

24.    On March 7, 2007, Levitt issued a press release announcing its financial results for

the fourth quarter and year end of 2006, the period ended December 31, 2006. For the quarter, the

Company reported a net loss of $10.7 million for the fourth quarter, or a diluted loss per share of

Case No. _____ -Civ-_____

$0.54, and total revenues of $181.4 million. Defendant Levan, commenting on the results, stated, in

pertinent part, as follows:

> 2006 was one of the most challenging years for the U.S. homebuilding industry in
> well over a decade. Market trends in Florida continue to reflect soft demand,
> declining new orders, lower conversion rates, and an increase in buyers failing to
> fulfill their contractual obligations to purchase homes. We experienced decreases in
> new orders and increases in cancellations throughout the year and we don't believe
> that there is any meaningful evidence that this trend will reverse in the near future.
> We are reducing the prices of our homes to meet current market conditions while
> being mindful of protecting our project backlogs; however, potential buyers remain
> concerned by future trends in the Florida real estate market and difficulty in selling
> their existing homes. While continuing to invest in sales and marketing initiatives to
> increase traffic and improve conversion rates, we are also examining overhead levels
> necessary to balance our long term goals with current market conditions. As a result,
> we reduced our headcount in February by 89 employees, which represented 16% of
> our homebuilding headcount, and continue to look at other opportunities for cost
> savings. In the event of prolonged weak demand, additional capital will be necessary
> to strengthen the Company's balance sheet, and various alternative strategies are
> being explored to ensure the Company maintains sufficient liquidity in this uncertain
> market. This need contributed to the Board's decision to accept a merger offer from
> BFC Financial Corporation (NYSE Arca: BFF) in January. We remain optimistic
> about the long term opportunities available in the homebuilding market, and Florida
> in particular, but must remain vigilant in preserving resources in the event of an
> extended downturn and having the financial strength to exploit the opportunities
> when the market returns to normalized growth.

25.    On May 9, 2007, Levitt issued a press release announcing its financial results for the

first quarter of 2007, the period ended March 31, 2007. For the quarter, the Company reported net

income of $1.3 million, or $0.06 per diluted share, and total revenues of $144.2 million. Defendant

Levan, commenting on the results, stated, in pertinent part, as follows:

> The weakness in the homebuilding industry continued during the first quarter of
> 2007, particularly in Florida, and during the period we took a number of steps in
> response to these market conditions. We adopted a more aggressive pricing practice
> in most of our Florida communities, reducing the prices of our homes with the goal
> of improving conversion rates. We continued to invest in our sales and marketing
> initiatives in an attempt to increase traffic and conversions, and we are pleased that
> the early results from these efforts have been positive. Additionally, we initiated and
> pursued expense management initiatives with a focus on reducing operating costs

Case No. _____-Civ-_____

without affecting our product, customer service standards or core operating platform. We analyzed our overhead structure, and in February 2007 we reduced our headcount by 89 employees or approximately 16% of our homebuilding workforce. In the event the current adverse market continues for a longer period or further deepens, we have explored various alternative strategies and taken steps to strengthen the company's balance sheet and maintain our liquidity. This process resulted in the Board's decision to accept a merger offer from BFC Financial Corporation in January 2007. As an alternative strategy, in the event shareholders do not approve the merger, the Company will seek to raise additional capital through an equity rights offering to its existing shareholders.

We remain optimistic about the long-term opportunities in the homebuilding market nationally, and in Florida. However, our current challenge is to deal with an extended industry downturn and at the same time position the Company to take advantage of opportunities as they arise.

26.     On May 15, 2007, Levitt issued a press release announcing that it will restate its previously-issued financial statements for the first quarter of 2007 due to an accounting error relating to an inter-company transaction. The restatement showed that the Company overstated its diluted earnings per share by $0.01, or 28%.

27.     Upon this news, shares of the Company's stock fell $0.57 per share, or 5.86%, to close at $9.16 per share.

28.     On August 9, 2007, after the markets closed, Levitt issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007. For the quarter, the Company reported a net loss of $58.1 million, or $2.93 per diluted share, and total revenues of $127.8 million. Defendant Levan, commenting on the results, stated, in pertinent part, as follows:

The housing market continued to weaken throughout the second quarter. New and existing home inventories have continued to increase nationally as a consequence of decreased consumer demand and reduced credit availability, leading to downward pressure on new order pricing throughout our markets. We believe that market conditions will continue to be challenging for the foreseeable future, and our quarter-end impairment evaluations reflect our current outlook for the market. Future impairments may also be necessary if the market does not strengthen.

- 9 -

Case No. _____-Civ-_____

As previously announced, on January 30, 2007 we entered into a merger agreement with BFC Financial Corporation ("BFC") which if consummated would result in Levitt becoming a wholly-owned subsidiary of BFC. In 2007, Levitt has incurred net losses of $57.1 million including pretax impairment charges associated with its homebuilding inventory of $63.3 million. Levitt and Sons, our homebuilding subsidiary, has experienced material negative cash flow, which to date has been advanced by Levitt Corporation. Under the terms of Levitt and Sons' project financing, in addition to scheduled principal payments, cash payments are required at any time if a reappraisal of property reflects a valuation resulting in a loan to value ratio below required amounts. The merger agreement contains numerous conditions to the transaction and grants each party the right to terminate upon certain events. Such conditions include, among other things, receipt of various shareholder approvals, the absence of any material adverse change, the representations and warranties of each party being true and correct at the time of the merger, the operation of the businesses in the ordinary course and the previously delivered opinions of the financial advisors not being withdrawn. BFC has advised Levitt that it is reviewing the transaction to determine if it is willing to proceed with the transaction based on the current circumstances and events. In light of the above, and given our recent financial results, the current state of the real estate market and its capital requirements, Levitt is also reviewing how best to proceed. As previously announced, Levitt has indicated that in the event the merger did not go forward, it would pursue a rights offering to its shareholders in order to generate capital.

29.     Upon this news, on the next trading day, shares of the Company's stock fell $0.62 per share, or over 12%, to close at $4.41 per share. Over the next two trading days, shares of the Company's stock fell an additional $0.66 per share, or over 15%.

30.     Then, on August 15, 2007, the Company issued a press release announcing that the merger agreement with BFC Financial Corporation had been terminated. No further explanation was provided. The Company further announced that it would proceed with its previously-announced rights offering.

31.     Upon this news, shares of the Company's stock fell $0.79 per share, or over 21%, to close at $2.96 per share.

- 10 -

Case No. _____ -Civ-_____

32.    The statements referenced above in ¶¶21-22, 24-25, 28 were materially false and misleading when made because they misrepresented and failed to disclose the following adverse facts which were then known to Defendants or recklessly disregarded by them:

(a)    that the Company's Levitt and Sons subsidiary was in much worse financial condition than publicly represented. Levitt and Sons was saddled with excessive amounts of unneeded and overpriced land which would not be feasible to develop for some time. Furthermore, Levitt and Sons was struggling to complete projects it had already begun and in many instances was failing to complete construction of homes that it had already sold as it lacked the financial resources to follow through on its contracts;

(b)    as a result of the foregoing, the Company was materially overstating its financial results because it was failing to timely record an impairment in the value of its homebuilding inventory at Levitt and Sons. Although Defendants acknowledged the difficult housing market, their public statements failed to advise investors of the true financial condition of the Company;

(c)    that the Company's loans and advances to Levitt and Sons would not be recovered as the subsidiary lacked the financial resources to pay now and in the foreseeable future; and

(d)    that Levitt and Sons was insolvent.

33.    On October 11, 2007, after the markets closed, the Company issued a press release announcing that it "expects to take pretax charges of approximately $160-170 million associated with impairment charges on homebuilding inventory at its wholly owned subsidiary Levitt and Sons, and the write-off of its investment and loans made to Levitt and Sons." The Company stated that its

- 11 -

Case No. _____-Civ-_____

decision to take a charge was based on the "continued deterioration of the homebuilding market and the belief that, based on market conditions for the foreseeable future, Levitt Corporation's investment and the loans made to Levitt and Sons will likely not be recoverable through future cash flows."

34.     Upon this news, on the next trading day, shares of the Company's stock fell $0.21 per share, or almost 8%, to close at $2.48 per share.

35.     On November 9, 2007, it was announced that Levitt and Sons filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code.

36.     The market for Levitt common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Levitt's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Levitt's common stock relying upon the integrity of the market price of Levitt's common stock and market information relating to Levitt, and have been damaged thereby.

37.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Levitt's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the

- 12 -

Case No. _____ -Civ-_____

damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Levitt's business, prospects and operations.  These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Levitt and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

### Additional Scienter Allegations

39.    As alleged herein, Defendants acted with scienter in that Defendants: knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Levitt, their control over, and/or receipt and/or modification of Levitt's allegedly materially misleading misstatements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Levitt, participated in the fraudulent scheme alleged herein.

Case No. _____ -Civ-_____

## Loss Causation/Economic Loss

40.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct which artificially inflated the prices of Levitt's common stock and operated as a fraud or deceit on Class Period purchasers of Levitt's common stock by failing to disclose: (i) its true financial condition by overstating its financial results for the first quarter of 2007; (ii) the true value of its homebuilding inventory at Levitt and Sons, a subsidiary at Levitt; (iii) the ability of Levitt and Sons to repay money lent to it by Levitt; and (iv) the ability of Levitt and Sons to continue as a going concern. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, the price of Levitt's common stock fell precipitously as the prior artificial inflation came out. As a result of their purchases of Levitt's common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages, under the federal securities laws.

41.     As a direct result of Defendants' disclosures on May 15, 2007, August 9, 2007, and August 15, 2007, the price of Levitt common stock fell precipitously, falling by more than a collective $6.00 per share, or approximately 70%. These drops removed the inflation from the price of Levitt common stock, causing real economic loss to investors who had purchased Levitt common stock during the Class Period.

42.     The 70% decline in the price of Levitt common stock after these disclosures came to light was a direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price decline in Levitt common stock negates any inference that the loss suffered by Plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated

Case No. _____-Civ-_____

to the Defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by Plaintiff and

the other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate

the prices of Levitt common stock and the subsequent significant decline in the value of Levitt

common stock when Defendants' prior misrepresentations and other fraudulent conduct were

revealed.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

43.     At all relevant times, the market for Levitt's common stock was an efficient market

for the following reasons, among others:

(a)     Levitt common stock met the requirements for listing, and was listed and

actively traded on the NYSE, a highly efficient and automated market;

(b)     as a regulated issuer, Levitt filed periodic public reports with the SEC and the

NYSE;

(c)     Levitt regularly communicated with public investors via established market

communication mechanisms, including regular disseminations of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as

communications with the financial press and other similar reporting services; and

(d)     Levitt was followed by several securities analysts employed by major

brokerage firms who wrote reports which were distributed to the sales force and certain customers of

their respective brokerage firms. Each of these reports was publicly available and entered the public

marketplace.

44.     As a result of the foregoing, the market for Levitt common stock promptly digested

current information regarding Levitt from all publicly available sources and reflected such

- 15 -

Case No. _____ -Civ-_____

information in the prices of the stock. Under these circumstances, all purchasers of Levitt common stock during the Class Period suffered similar injury through their purchase of Levitt common stock at artificially inflated prices and a presumption of reliance applies.

### No Safe Harbor

45.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Levitt who knew that those statements were false when made.

### COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were

- 16 -

Case No. _____-Civ-_____

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

48.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

49.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Levitt common stock. Plaintiff and the Class would not have purchased Levitt common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Levitt common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Levitt within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Levitt, and their ownership of Levitt stock, the Individual Defendants had the

- 17 -

Case No. _____-Civ-_____

power and authority to cause Levitt to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED:  January 25, 2008                                   COUGHLIN STOIA GELLER
                                                          RUDMAN & ROBBINS LLP


_____
                                                              JACK REISE

Case No. _____-Civ-_____

PAUL J. GELLER
Florida Bar No. 984795
pgeller@csgrr.com
JACK REISE
Florida Bar No. 058149
jreise@csgrr.com
DAVID J. GEORGE
Florida Bar No. 0898570
dgeorge@csgrr.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)

COUGHLIN STOIA GELLER
 RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiff

MAGISTRATE JUDGE
O'SULLIVAN

CIV-GRAHAM

%JS 44 (Rev. 3/99)  **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT D. DANCE, Individually and on Behalf of All Others Similarly Situated

**DEFENDANTS**

LEVITT CORP., ALAN B. LEVAN and GEORGE P. SCANLON,

(b) County of Residence of First Listed Plaintiff _Palm Beach County, FL_
(EXCEPT IN U.S. PLAINTIFF CASES)

FILED by _D.C._
INTAKE
JAN 25 2008

County of Residence of First Listed _Broward County_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Coughlin Stoia Geller Rudman & Robbins
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432   Tel. 561/750-3000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

Attorneys (If Known)

08-60111 O'Sullivan

Broward 0:08CV 60111 Graham

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☒ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | ☐ 861 HIA (1395ff) | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | Injury | | | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | **FEDERAL TAX SUITS** | Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | or Defendant) | Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | Security Act | | State Statutes |
| | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5]

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY (See instructions):

JUDGE _____  DOCKET NUMBER _____

DATE  Jan. 25, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT  350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

542128