**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No. 08-60111-CIV-GRAHAM/McALILEY

| | |
|---|---|
| ROBERT D. DANCE, et al. Individually and on behalf of all others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| LEVITT CORPORATION (*d/b/a* WOODBRIDGE HOLDING CORPORATION), and ALAN B. LEVAN, | ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Lead Plaintiff, Robotti & Company, LLC and Robotti & Company Advisors, LLC ("Lead Plaintiff"), respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Class Certification.

**PRELIMINARY STATEMENT**

Lead Plaintiff brought this securities fraud class action ("Action") on behalf of all persons or entities who purchased Levitt Corporation ("Levitt" or "Company") securities between January 31, 2007 and August 14, 2007 ("Class Period") and were damaged thereby ("Class"). The Action alleges that Defendants knowingly and recklessly hid damaging information during the Class Period, resulting in an inflated purchase price. Defendants' false and misleading statements drove the stock price up more than 21% during the Class Period.

Courts routinely certify securities fraud actions because they are prototypical class actions. This case meets all of the requirements for certification of a class under Rules 23(a) and (b)(3). Lead Plaintiff will be able to demonstrate Defendants' securities violations and the ensuing damages on a predominantly common basis, with evidence and methodologies equally applicable to each Class member. Accordingly, this Court should certify the proposed Class and appoint Robotti & Company, LLC and Robotti & Company Advisors, LLC as Class Representative. In addition, this Court should appoint Kirby McInerney LLP and Berman DeValerio, who were appointed Lead Counsel and Liaison Counsel by this Court on July 7, 2008,[1] as Lead and Liaison Class Counsel under Rule 23(g).

## FACTUAL BACKGROUND

On January 31, 2007, Alan Levan, CEO and Chairman of the Board at Levitt Corporation, announced a merger agreement ("Merger") between Building Foremost Companies Financial Corporation ("BFC") and Levitt.[2] The proposed transaction, based on BFC stock's closing price on the previous trading day, valued Levitt stock at $14.41 per share - a premium of 32% over the closing price of $10.88 per share.[3] Defendant Alan B. Levan commented that the transaction was "intended to provide Levitt shareholders a significant market premium."[4] However, Levitt failed to disclose that the Company's subsidiary, Levitt and Sons, was in much worse financial condition than publicly represented.[5] Levitt and Sons was saddled with

---

[1] Order, DE 17.
[2] Second Am. Compl. [DE 51] ¶ 6.
[3] *Id.* ¶ 44.
[4] *Id.* ¶ 44.
[5] *Id.* ¶8.

excessive amounts of unneeded and overpriced land,[6] was unable to repay loans and advances from Levitt, and struggled to complete projects.[7]

The slowing demand, rising cancellation rates, peak price purchases of land, and rising costs should have put Defendants on notice that Levitt and Sons' real estate inventory was impaired.[8]  Defendants knew that the *pro formas* (reports the Company usually prepared for each of its developments that subtracted the land purchase price and the cost of improvements from the anticipated selling price) were essential and the main tool used to determine asset impairment.[9]  However, the *pro formas* for the inventory at issue here were not updated during the majority of the Class Period.[10]  Indeed, as of mid-July 2007, the *pro formas* had not been updated since at least December 2006.[11]

Statements made during the Class Period were materially false because they "fail to disclose the rapidly deteriorating financial condition of Levitt."[12]  As a result of the foregoing, the Company was materially overstating its financial results because it failed to timely record impairments in the value of its homebuilding inventory at Levitt and Sons.[13]  Although defendants acknowledged the difficult housing market, their public statements failed to advise investors of the true financial condition of the Company.[14]

---

[6] *Id.* ¶36.
[7] Motion for Appointment of Lead Counsel [DE 9] p. 4.
[8] Second Am. Compl. [DE 51] ¶106.
[9] *Id.* ¶83.
[10] *Id.* ¶83.
[11] *Id.* ¶83.
[12] Order [DE 43] at 11.
[13] Second Am. Compl. [DE 51] ¶37.
[14] *Id.* ¶37.

In August 2007, Company disclosures sparked concerns that the Company's acquisition by BFC would be abandoned.[15]  On August 15, 2007, the Company announced that the merger agreement with BFC had been terminated.[16]  Upon that announcement, shares of the Company's stock sank $0.79 per share, or over 21%, to close at $2.96 per share.[17]

Subsequently, on October 11, 2007, Levitt announced that it would incur $160-$170 million in impairment charges.[18]  On November 9, 2007, it was announced that Levitt and Sons filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code.[19]  Upon these disclosures, Levitt stock, which had traded at above $13 per share during the Class Period, fell to less than $2 per share.[20]

By July 7, 2008, Plaintiff filed this lawsuit and Robotti was appointed by this Court as Lead Plaintiff for the following class:[21]

> All persons or entities who purchased or acquired Levitt Corporation securities from January 31, 2007, through August 14, 2007.  Excluded from the Class are Defendants herein, the directors, officers and employees of Levitt, the members of each individual Defendant's family, any entity in which any Defendants have controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors- and predecessors- in-interest, or assigns of any such excluding party.

The PSLRA assumes that securities actions will eventually be certified as class actions and so puts in place a procedure for selecting the Lead Plaintiff and eventual class representative.[22]  In appointing Robotti as the Lead Plaintiff, the Court found that Robotti had the "largest financial

---

[15] *Id.* ¶66.
[16] *Id.* ¶97.
[17] *Id.* ¶100.
[18] *Id.* ¶103.
[19] *Id.* ¶ 105.
[20] *Id.* ¶113.
[21]  Order [DE 17].
[22] *See* 15 U.S.C. 78u-4(a)(3).

interest" of any applicant and that it otherwise satisfied the relevant requirements of Rule 23, typicality and adequacy.[23]   Therefore, Plaintiff seeks certification of the injured Levitt stock purchasers.

## ARGUMENT

### I.    LEGAL ANALYSIS

Rule 23 governs class certification.  "The decision to certify is within the broad discretion of the district court."[24]   Although Lead Plaintiff has the burden of showing that the requirements of Rule 23 have been satisfied, "class action treatment is 'particularly appropriate' for securities fraud claims, and under such circumstances courts should err in favor of certifying a class."[25] This securities class action is no different, and Lead Plaintiff respectfully requests the Court certify this case as a class action.

### A.    The Four Prerequisites of Rule 23(a) Are Satisfied.

Rule 23(a) contains four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.   In order to obtain class certification, Lead Plaintiff must demonstrate that all four prerequisites of Rule 23(a) are satisfied and at least one element of Rule 23(b) is met.

### 1.    The Class Is Numerous.

Class certification is appropriate where the class is so numerous that joinder of all class

---

[23] Order [DE 17] at 4-5.

[24] *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (internal quotation omitted).

[25] *DeMarco v. Robertson Stephens Inc.*,  228 F.R.D. 468, 476 (S.D.N.Y. 2005); *see also In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991) ("the interests of justice require that in any doubtful case… any error, if there is to be one, should be committed in favor of allowing a class action.") (internal quotation omitted).

members would be impractical.[26]   The test requires a showing of impracticality, not

impossibility.  Precise enumeration of the number of class members is unnecessary,[27] as Plaintiff

"must only establish that joinder is impracticable through 'some evidence or reasonable estimate

of the number of purported class members.'"[28]  There is "no definite standard as to the size a

given class must attain in order to satisfy Rule 23(a)(1),"[29] but this Circuit recognizes that 40

members satisfies the numerosity requirement.[30]  "[W]here the numerosity question is a close

one, a balance should be struck in favor of a finding of numerosity . . . ."[31]

According to Woodbridge Holdings Form 10-K for the Fiscal Year Ended December 31,

2007, Levitt had approximately 96 million shares of common stock issued and outstanding.[32]

Based on this evidence, a reasonable estimate of the size of the Class is at least in the hundreds,

probably the thousands, of members.

"Practicability of joinder depends on many factors, including, for example, the size of the

class, ease of identifying its numbers and determining their addresses, facility of making service

on them if joined and their geographic dispersion."[33]  Here the members of the proposed Class

---

[26] *See D.W. by M. J. ex rel. D.W. v. Poundstone*, 165 F.R.D. 661, 670 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993); *Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 715-16 (S.D. Fla. 1979); 1 NEWBERG ON CLASS ACTIONS  § 3.4 (3d ed.1992).
[27] *Fifth Moorings Condo.*, 81 F.R.D. at 716; *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D. Fla. 1993).
[28] *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) (quoting *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981)).
[29] *Tapken v Brown*, No. 90-691, 1992 WL 178984, at *27 (S.D. Fla. Mar. 13, 1992).
[30] *See AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 680–81 (N.D. Ala. 2005) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)); *Kuehn v. Cadle Co., Inc.*, 245 F.R.D. 545, 548 (M.D. Fla. 2007); *see also Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (satisfaction of numerosity requirement presumed at 40 class members).
[31] *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).
[32] *See* Woodbridge Holdings Corp. Form 10-K filed March 17, 2008.
[33] *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).

are geographically diverse, making joinder impractical. Levitt investors are located all over the United States. Accordingly, the numerosity requirement of Rule 23 is met in this case.

### 2. Lead Plaintiff's Claims Present Questions of Law and Fact That Are Common to the Class.

Rule 23(a)(2) requires that there be at least one issue affecting all or a significant number of proposed class members. The threshold of commonality is "not high."[34] The rule does not require that all class members have identical legal claims,[35] nor does it require that *all* the questions of law or fact in a case be common.[36] The focus is on whether the representative's claims arise from the same course of conduct that gives rise to the class's claims, and whether the claims are based on the same legal theory.[37] Where allegations of wrongdoing involve a common course of conduct that allegedly affected all class members in a substantially similar way, the class members' claims will typically involve common questions of law or fact.[38] The Eleventh Circuit agrees that where allegations of wrongdoing arise from a common practice or course of conduct, the class members' claims will involve common questions or law and fact.[39]

---

[34] *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003); *Campos v. I.N.S.*, 188 F.R.D. 656, 659 (S.D. Fla. 1999) (citing *Forbrush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993)).

[35] *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

[36] *See Singer v. AT&T Corp.,* 185 F.R.D. 681, 687 (S.D. Fla. 1998); *Walco Investments, Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D. Fla. 1996); *Haitian Refugee Ctr., Inc. v. Nelson*, 694 F. Supp. 864, 877 (S.D. Fla. 1988); *Fifth Moorings Condo.,* 81 F.R.D. at 717.

[37] *See Kreuzfeld*, 138 F.R.D. at 599 (citing *Stewart v. Winter*, 669 F.2d 328 (5th Cir. 1982) ("the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members.").

[38] *Haitian Refugee*, 694 F. Supp. at 877; *Singer*, 185 F.R.D. at 688; *see also In re Amerifirst Sec. Litig.*, 139 F.R.D. at 428.

[39] *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir. 1987); *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983); *see also Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992); *Powers v. Stuart-James Co., Inc.*, 707 F. Supp. 499 (M.D. Fla. 1989); *see also Walco*, 168 F.R.D. at 325 (where plaintiff alleges unified scheme to defraud, "common questions are usually found").

In a securities fraud action, commonality is almost a given. Lead Plaintiff here seeks to prove that Defendants omitted or made misleading material statements, and that course of conduct will be common to all members of the Class.  Defendants' alleged false statements and omissions were uniformly made to all Class members as set forth in the Second Amended Complaint, and involve, among other things:

(i)   whether Defendants' press releases, public filings, and public statements concerning Levitt's financial and operating results contained misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances, not misleading;

(ii)   whether Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts in the documents, press releases, public filings, and public statements;

(iii)   whether the market price of Levitt during the Class Period was artificially inflated due to the material misstatements or omissions complained of herein; and

(iv)   whether the class members have sustained damages, and, if so, the appropriate measure thereof.

These questions of law and fact, common to each class member, satisfy Rule 23(a)(2).

### 3.   Lead Plaintiff's Claims Are Typical to Those Presented by the Class.

Rule 23(a)(3) requires that Lead Plaintiff's claims, as the proposed class representative, are typical of the claims of other members of the class.  "The central inquiry in determining whether a proposed class has [satisfied] the 'typicality' [requirement] is whether the 'class representative [is] part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members.'"[40]

Stated another way, typicality is satisfied where, as here, a plaintiff's claims "stem from the same event, practice, or course of conduct that forms the basis of the class claims and are

---

[40] *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997) (quoting *E. Tex. Motor Freight Sys. v Rodriguez*, 431 U.S. 395, 403 (1977)).

based upon the same legal or remedial theory."[41]   In determining typicality, the court should "focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large."[42]   The "mere presence of factual distinctions will not defeat typicality."[43]   Plaintiff's claims need only be typical, not identical.   The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory; furthermore, typicality will not be destroyed by factual variations.[44]

This Court already concluded that Robotti satisfied the typicality requirement during the Lead Plaintiff briefing, holding that its claims "are typical to those of the other potential class members, and Robotti appears to be able to fairly and adequately protect the interests of the class."[45]   The Court reasoned that Robotti seeks to represent a Class of persons who, like itself, "(a) purchased Levitt securities, (b) at market prices artificially inflated as a result of Defendants' violations of the securities laws, and (c) suffered damages thereby."   None of those factors has

---

[41] *Walco*, 168 F.R.D. at 326. *See also CV Reit Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992) (typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent and are based upon the same legal theories).

[42] *Campos,* 188 F.R.D. at 661 (quoting *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985)). *See also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Kennedy*, 710 F.2d at 717; *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'").

[43] *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1998).

[44] *See Kornberg,* 741 F.2d at 1337.

[45] Order [DE 17] at 4.

changed.  Because Lead Plaintiff seeks to prove that Defendants "committed the same unlawful acts in the same method against an entire class," the typicality requirement is satisfied here.[46]

### 4.   Lead Plaintiff and Lead Counsel Will Fairly and Adequately Represent the Interests of the Class

Like the three preceding requirements of Rule 23(a), the adequacy requirement found in Rule 23(a)(4), which requires that Lead Plaintiff demonstrate (1) that "the plaintiff's attorney is qualified, experienced and will competently and vigorously prosecute the suit;" and (2) "that the interest of the class representative is not antagonistic to or in conflict with other members of the class,"[47] is satisfied here.  The Court already found that Robotti and its counsel met the adequacy requirement during the Lead Plaintiff proceedings.[48]

### a.  The Lead Plaintiff

Robotti will protect and advance the interests of the Class, and its interests are not antagonistic to those of the Class.  While it is not necessary for Lead Plaintiff to "demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class,"[49] Lead Plaintiff is prepared to pursue the Class's claims to the fullest extent possible.

Lead Plaintiff is an adequate class representative. It suffered substantial losses as a result of the fraud discussed above, and has aggressively prosecuted this case on behalf of the putative Class.  Robotti purchased a total of 432,650 shares of Levitt stock at artificially inflated prices during the Class Period, and suffered approximate losses of $3.84 million on a FIFO basis and $3.76 million on a LIFO basis as a result of Defendants' misconduct.[50]  Since this case has been pending, Robotti has been a staunch advocate on behalf of the Class and has vigorously pursued

---

[46] *Kennedy*, 710 F.2d at 717.
[47] *Powers v. Gov't  Employees Ins. Co.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998) (citing *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985)).
[48] Order [DE 17] at 4.
[49] *Kirkpatrick*, 827 F.2d. at 727.
[50] *See* Exs. B and C to Robotti's Mot. Lead Plf. [DE 9] at 7.

this case.

"The requirement that claims or defenses of the representative party be typical of the claims or defenses of the class is satisfied as long as the representative has no interests that conflict with members of the class."[51]  This Court has already found that Robotti's interests are not antagonistic with other class members and that it has a sufficient interest in the outcome of this case to ensure vigorous advocacy.[52]

### b.  Lead Counsel

The second prong of the test for whether there is adequate representation is also satisfied. "[T]he single most important factor considered by the courts in determining the quality of the representative's ability and willingness to advocate the cause of the class has been the caliber of the plaintiff's attorney."[53]

Here, Lead Counsel, Kirby McInerney LLP and its Liaison Counsel, Berman DeValerio, "are experienced in handling class action securities" and "both firms are adequately staffed to handle a potentially large class and to manage the case."[54]  In addition, the efforts of Plaintiffs' counsel in this case thus far show that counsel are committed to the vigorous prosecution of this action and possess the skills necessary for such efforts.  Thus far, Plaintiff's counsel has prepared an amended complaint,[55] reviewed numerous interviews with confidential witnesses, defended a

---

[51] *See Guarantee Ins. Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 565 (N.D. Ill. 1972) (citing *Cannon v. Tex. Gulf Sulphur*, 47 F.R.D. 60, 63 (S.D.N.Y. 1969)).
[52] Order [DE 17] at 4.
[53] 1 NEWBERG ON CLASS ACTIONS § 3:24 (3d ed. 1992); *see also Kirkpatrick*, 827 F.2d. at 726 (question of adequacy of Plaintiff most often "involve[s] questions of whether Plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation and of whether Plaintiffs have interests antagonistic to those of the rest of the class") (quoting *Griffin*, 755 F. 2d at 1532).
[54] Order July 7, 2007 [DE 17] at 5.
[55] Amended Complaint, September 3, 2008 [DE 22].

motion to dismiss with regard to the amended complaint,[56] filed a Second Amended Class Action Complaint,[57] and has appeared for hearings.   The Court should accordingly appoint Kirby McInerney LLP and its Liaison Counsel, Berman DeValerio, as lead and liaison class counsel, respectively.

### B.      Lead Plaintiff's claims are maintainable under Rule 23(b)(3).

In addition to satisfying Rule 23(a), class representatives must also satisfy one of the three subsections of Rule 23(b).[58]   In securities fraud actions, like this case, the requirements of Rule 23(b)(3) are routinely met.[59]

### 1. Common questions of Law and Fact Predominate.

Common questions of law and fact are generally held to predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication.[60] Predominance is established where class issues subject to generalized proof predominate over those issues that require individual proof.[61]   "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."[62]   "In order to

---

[56] Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson's Mot. Dismiss [DE 30].
[57] Second Amended Complaint, September 18, 2009 [DE 51].
[58] *See Powers*, 192 F.R.D. at 318.
[59] *In re Ins. Mgmt. Solutions Group Inc. Sec. Litig.*, 206 F.R.D. 514, 518 (M.D. Fla. 2002) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud.) (internal quotation omitted)
[60] *See* 7AA WRIGHT, MILLER & KANE, FED. PRAC. & PROC. § 1778 at 528 (3d ed 2005).
[61] *Kerr v. West Palm Beach*, 875 F.2d 1546, 1557–58 (11th Cir. 1989).
[62] *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89, 93 (S.D.N.Y. 1981)); *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. at 234.

determine whether common questions predominate, '[the court is] called upon to examine the cause[s] of action asserted in the complaint on behalf of the putative class.'"[63]

### a. Federal Securities Claims Against Levitt and the Individual Defendants

Common questions of law or fact clearly predominate in this case. As alleged in the Second Amended Complaint, Levitt harmed the putative class by failing to reveal its operating and financial improprieties, thereby causing its stock to trade at artificially inflated prices.[64] Indeed, as the Supreme Court has noted, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[65] As the Eleventh Circuit explained in *Kirkpatrick v. J. C. Bradford & Co.*, "a single conspiracy and fraudulent scheme against a large number of individuals" is "particularly appropriate" for class action treatment.[66] And the fact that different investors lost different sums of money does not bar class certification.[67] Moreover, certifying a class when there is an overriding common issue saves judicial resources by avoiding duplicate proceedings and proof.

In addition, common questions predominate here because the Second Amended Complaint alleges a fraud-on-the-market theory, which presumes reliance and is ideally suited to class actions alleging securities fraud.[68] The Supreme Court expressly endorsed the fraud-on-

---

[63] *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

[64] Second Am. Compl. [DE 51].

[65] *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2250 (1997).

[66] 827 F.2d 718 (11th Cir. 1987).

[67] *Kornberg*, 741 F.2d at 1337; *CV Reit*, 144 F.R.D. at 696; *In re Amerifirst Sec. Litig.*, 139 F.R.D. at 428; *In re Infant Formula Antitrust Litig.*, No. MDL 878, 1992 WL 503465, at *6 (N.D. Fla. Jan. 13, 1992) ("The issue of individual damages will not serve to defeat an otherwise valid class certification attempt."); *Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 326–27 (5th Cir. 1978) ("in cases where the fact of injury and damage breaks down in what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculation,' the existence of individualized clams for damage seems to offer no barrier to class certification on grounds of manageability.").

[68] *See Tapken*, 1992 WL 178984, at *29–30.

the- market doctrine in *Basic, Inc. v. Levinson,* 485 U.S. 224, 227 (1988). The theory is based on the efficient-market hypothesis, which assumes that material information about a company is immediately reflected in the price of the stock.[69] Because the market is interposed between the buyer and seller, there is no need to prove subjective reliance.[70] The presumption is most justified in the class action setting where the plaintiffs allege that misrepresentations or omissions affected security prices in a secondary market.[71] Because the stock price is artificially inflated by the alleged misstatements or omissions, the purchasers or sellers of the securities who rely on the price are defrauded because they buy or sell assuming the stock is based on proper market information.[72]

Therefore, to prevail under the fraud-on-the-market theory, a plaintiff must demonstrate that the defendants' misrepresentations and omissions caused an artificial inflation of the market value of the relevant stock.[73] A plaintiff need not prove individual reliance upon the particular misrepresentations or omissions of defendants.[74] Consequently, "under a 'fraud on the market' theory, questions of individual reliance are not sufficient reason to deny class action status."[75] The Eleventh Circuit recognizes that "the fraud on the market theory finds its greatest justification when applied to class actions alleging fraudulent misrepresentations or omissions that affected security prices on a developed open market.[76]

---

[69] *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F. Supp. 342, 354 (S.D. Fla. 1991).
[70] *Id.*
[71] *Id.* at 355.
[72] *Id.*
[73] *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 84–85 (M.D. Fla. 1977).
[74] *Id.* at *85.*
[75] *Id.*
[76] *Lipton v. Documation Inc.*, 734 F.2d 740, 745 (11th Cir. 1984).

In this case, Levitt's shares were listed and actively traded on the New York Stock Exchange during the Class Period,[77] which constitutes an open and efficient market.[78]  In fact, the market for Levitt common stock was open, well-developed and efficient at all relevant times. Levitt was also followed by several securities analysts, employed by major brokerage firms, who wrote reports that were publicly available and entered the public marketplace.  Levitt, as a regulated issuer, also filed periodic public reports with the SEC and New York Stock Exchange.[79]

Numerous courts have held that class action suits involving nationally traded securities are almost always entitled to the presumption.[80]  Because Levitt's common stock traded on an open and efficient market and the price of those shares reflected all publicly available information about it, proof of actual reliance will not need to be proven for each Class member.

### b.  Classwide Issues of Loss Causation Predominate

In this case, it is clear that common questions predominate over individual issues.  Facts common to all members of the Class will establish loss causation because all of their losses resulted from the precipitous decline in the price of Levitt stock immediately after the market learned the facts that Defendants had intentionally concealed.  Additionally, the court has already upheld Plaintiff's allegations that Defendants made false statements and omissions and engaged in deceptive conduct that artificially inflated Levitt's stock price and caused Plaintiff's losses

---

[77] Second Am. Compl. ¶ 15.

[78] *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 296 n.133 (S.D.N.Y. 2008) ("[T]he federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency."); *Basic Inc. v. Levinson*, 485 U.S. 224, 228 (1988) (When the Supreme Court embraced the fraud-on-the market theory for presuming reliance, it did so in the context of stocks trading on the NYSE); *In re Sunbeam Sec. Litig.*, 2001 No. 98cv8258, 2001 WL 899658, *1 (S.D. Fla. July 3, 2001);  *see also, Ross v. Ambercrombie & Fitch Co*., 257 F.R.D. 435, 442 (S.D. Ohio 2009) (stocks "traded on the New York Stock Exchange ("NYSE"), a recognized efficient market."

[79] Second Am. Compl. [DE 51].

[80] *In re Sunbeam Sec. Litig.,* 2001 WL 899658 at *1; See also, *In re Marsh & McLennan Cos*., *Inc. Sec. Litig*., No. 04cv8144, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).

when the truth was revealed on May 15, 2007, August 9, 2007 and August 15, 2007.[81]  Moreover, Lead Plaintiff clearly plead that Levitt's stock declined, as the truth about its impaired inventory became known."[82]

### c.  Section 20(a) claim

To allege control person liability under Section 20(a) in this Circuit, a plaintiff must plead that: (1) the controlled entity committed a primary violation of Section 10(b); (2) the control person or entity had the power to control the general business affairs of the controlled entity; and (3) the control person "'had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in primary liability.'"[83]  In the Eleventh Circuit, a defendant is not required to have exercised this power to be liable under Section 20(a).[84]  The plain language of the statute provides that the necessary control can be "indirect."[85]  Moreover, SEC regulations define "control," "controlling" and "controlled by" as, "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[86]  In this Circuit, Section 20(a) does not have a

---

[81] Order [D.E. 43] at  25-26.

[82] Opp. MTD [D.E. 35] at 25; Second Amended Complaint [D.E. 51] at 46-47.

[83] *Theoharous v. Fong*, 256 F.3d 1219, 1227 (11th Cir. 2001); *see also In re Spear & Jackson Sec. Litig.*, 399 F. Supp. 2d 1350, 1356, 1359 (S.D. Fla. 2005).

[84] *See Binder v. Gordian Sec., Inc.*, 742 F. Supp. 663, 668 (N.D. Ga. 1990) (holding that defendant need not actually participate in challenged transaction, as such a requirement would render meaningless the concept of secondary "controlling person" liability); *In re Villa*, 261 F.3d 1148, 1152 (11th Cir. 2001) (holding that term "controlling person" under Section 20(a) may include any person who has power to control conduct of another person who has violated securities laws).

[85] *See* 15 U.S.C. § 78t(a); *In re PSS World Med., Inc. Sec. Litig.*, 250 F. Supp. 2d 1335, 1351 (M.D. Fla. 2002).

[86] *See* 17 C.F.R. §240.12b-2; *see also In re Hamilton Bankcorp, Inc. Sec. Litig.*, 194 F. Supp. 2d 1353, 1360 (S.D. Fla. 2002); *Fuechtman v. Mastec, Inc.*, 390 F. Supp. 2d 1264, 1268 (S.D. Fla. 2005) (finding control alleged against individual who was no longer executive at time of misconduct where he had at least power to indirectly control corporate policy through 40% ownership stake, had signed registration statement, and Form 10-K stated company was controlled by him).

scienter requirement.[87]

Clearly, all of these elements may be proven on a class-wide basis, because they do not in any way involve Lead Plaintiff or members of the Class.  Instead, the analysis focuses on the relationship between Levitt and the Individual Defendant.  These facts will apply uniformly to all claims by all Class members.  Accordingly, certification of the Section 20(a) claim for class treatment is appropriate.

### 2. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy.

The second part of subsection (b)(3) mandates consideration of whether a class action is superior to other methods to resolve the claims.  The superiority requirement is, by its terms, a comparative method that presumes the availability of other methods of adjudication,[88] and that assumes that the burden is on the defendant to establish the lack of superiority.[89]  Therefore, in order to establish a lack of superiority, Defendants must show that there are alternative, "superior" methods of resolving the claims of the class members.[90]

Fed. R. Civ. P. 23(b)(3) identifies four factors used to determine whether class treatment would be fair and efficient:

(i)    the interest of members of the class in individually controlling the prosecution of separate actions;

(ii)   the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(iii)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[87] *See Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996).
[88] *Partain v. First Nat'l. Bank of Montgomery*, 59 F.R.D. 56, 61 (M.D. Ala. 1973).
[89] 2 NEWBERG ON CLASS ACTIONS, § 4:27, p. 4-108 (3d ed. 1992).
[90] *See Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 487 (E.D. Pa. 1977).

(iv)   the difficulties likely to be encountered in the management of a class action.[91]

All of these factors militate in favor of maintenance of a class action in this case.  As described above, the Class members are geographically dispersed.  To require separate suits in this case would be "prohibitive and ridiculous and would deprive many of a remedy."[92]  The management of the Class presents no particular difficulties.  On the contrary, a multitude of individual lawsuits would duplicate proof of the predominant issues.

### 3.   Other Considerations Under Rule 23(b)(3).

It also bears mentioning that the additional considerations under Rule 23(b)(3) support the conclusion that class certification will be superior to individual lawsuits.  The costs and expenses of such individual actions, particularly when weighed against the individual recovery obtainable, would be prohibitive.  Since no Class member possesses a sufficiently strong interest in individually controlling the prosecution of separate actions, and since the Class members "are in a poor position to seek legal redress . . . because such redress is disproportionately expensive," a class action is essential to bring them some measure of justice.[93]

Prosecution of this case as a class action will "'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'"[94]  The common and predominant issues of liability discussed above relate specifically to Defendants and can be established at one time, in one proceeding, on a class-wide basis.  The alternative to class

---

[91] Fed. R. Civ. P. 23(b)(3)(A)–(D).

[92] *See City of Pampano Beach v. Fl. Dep't of Agric.,* No. 00-18394, 2002 WL 1558217, *6 (Fl. Cir. Ct. Jan. 24, 2002); *Kennedy,* 710 F.2d at 718.

[93] *In re Amerifirst Sec. Litig.*, 139 F.R.D. at 435. In addition, any Class member who wishes to control his own claim may "opt-out" of the Class under Rule 23(c)(2) in order to bring a separate action

[94] *See Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2nd Cir. 1970).

certification would likely mean a "multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake."[95]

## II.    CONCLUSION

Lead Plaintiff respectfully requests that the Court certify the Class pursuant to Rule 23(a) and (b)(3), designating Lead Plaintiff the Class representative and Lead and Liaison Counsel as class counsel.

Dated:  April 9, 2010                    Respectfully submitted,

                                         BERMAN DEVALERIO

                                         ___s/ Manuel J. Dominguez_____
                                         Manuel J.  Dominguez (FBN 0054798)
                                         mdominguez@bermandevalerio.com
                                         Michael J. Pucillo (FBN 261033)
                                         mpucillo@bermandevalerio.com
                                         4280 Professional Center Drive
                                         Suite 350
                                         Palm Beach Gardens, FL 33410
                                         Tel:         (561) 835-9400
                                         Fax:         (561) 835-0322

                                         *Liaison Counsel and Attorney for Plaintiff*


                                         KIRBY McINERNEY LLP
                                         Daniel Hume, *pro hac vice*
                                         Ira M. Press, *pro hac vice*
                                         825 Third Avenue, 16th Floor
                                         New York, NY 10022
                                         Tel:         (212) 371-6600
                                         Fax:         (212) 751-2540
                                         dhume@kmllp.com
                                         ipress@kmllp.com

                                         *Lead Counsel and Attorney for Plaintiff*

---

[95] *Green*, 406 F.2d at 301.

## <u>CERTIFICATE OF SERVICE</u>

I, Manuel J. Dominguez, certify that on April 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Manuel J. Dominguez
Manuel J. Dominguez

*Robert D. Dance, et al., v. Levitt Corp., et al.*
**Case No. 08-60111-CIV-GRAHAM/McALILEY**

**SERVICE LIST**

Eugene E. Stearns
estearns@swmwas.com
Richard B. Jackson
rjackson@swmwas.com
Adam M. Schacter
aschacter@swmwas.com
STEARNS WEAVER MILLER WEISSLER
  ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:  (305) 789-3200
Facsimile:  (305) 789-3395
ECF Notification

*Attorneys for Defendants Levitt Corporation,*
*and Alan B. Levan*


Manuel J. Dominguez
mdominguez@bermandevalerio.com
BERMAN DEVALERIO
4280 Professional Center Drive; Suite 350
Palm Beach Gardens, FL 33410
Telephone:  (561) 835-9400
Facsimile:  (561) 835-0322
ECF Notification

*Liaison Counsel and Attorney for Plaintiffs*

Daniel Hume, *pro hac vice*
dhume@kmllp.com
Ira M. Press, *pro hac vice*
ipress@kmllp.com
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
ECF Notification

*Lead Counsel and Attorneys for Plaintiffs*

Paul J. Geller
pgeller@rgrdlaw.com
David J. George
dgeorge@rgrdlaw.com
Jack Reise
jreise@rgrdlaw.com
ROBINS GELLER RUDMAN & DOWD LLP
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Telephone:  (561) 750-3000
Facsimile:  (516) 750-3364
ECF Notification

*Attorneys for Robert D. Dance*

Samuel H. Rudman
srudman@rgrdlaw.com
David A. Rosenfeld
drosenfeld@rgrdlaw.com
ROBINS GELLER RUDMAN & DOWD LLP
58 S. Service Road
Suite 200
Melville, NY 11747
Telephone:  (631) 367-7100
Facsimile:  (631) 367-1173
ECF Notification

*Attorneys for Robert D. Dance*