**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 08-CIV-60111-GRAHAM/McALILEY

ROBERT D. DANCE, individually and on behalf of
all others similarly situated,

Plaintiff,

v.

LEVITT CORPORATION (*d/b/a/* WOODBRIDGE
HOLDINGS, LLC), and ALAN B. LEVAN,

Defendants.

**PLAINTIFFS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

**Page No.**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      CLASS CERTIFICATION SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.     This Court Should Adopt the Majority View, Which Holds that Investment Advisors with Discretionary Trading Authority And/or Authorization to Institute Legal Proceedings Possess the Requisite Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.     Certification of the Proposed Class Would be Warranted Even if the Court Were Inclined to Follow *Huff* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

              1.     Plaintiffs Can Cure Any Standing Defects and Should Be Permitted to Do So . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

              2.     Plaintiffs Have Article III Standing in Their Own Right . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Defendants oppose class certification on a single supposed ground: that Lead Plaintiffs ("Plaintiffs") lack standing under Article III because they are investment advisors who purchased the subject securities for the accounts of their clients and not themselves.  Defendants urge this Court to adopt the reasoning of *W.R. Huff Asset Mgmt Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108-09 (2d Cir. 2008).  There, the court held that investment advisors do not have standing unless they have "legal title to, or a proprietary interest in, the claim," and that an investment advisor's mere discretionary trading authority or authorization to institute legal proceedings on the client's behalf is insufficient.

*Huff*, however, is not binding and does not represent the law in this Circuit.  The majority of courts hold that investment advisors with discretionary trading authority and/or authorization to sue do have standing to bring actions under the securities laws.  Indeed, most courts find that investment advisors are not only permissible lead plaintiffs in securities class actions, but desirable ones. This Court should adopt the majority view, as have other courts in this district.

Furthermore, certification of the proposed class would be warranted even if this Court were inclined to follow *Huff*.  A named plaintiff's lack of standing is not a basis for dismissal of a class action or denial of class certification.  Courts simply cure the problem, by adding and/or substituting plaintiffs or permitting a class member with indisputable standing to assign its claims to the original plaintiff.

Here, any standing defect is easily curable.  As set forth in the Declaration of Robert J. Sullivan and Marshall Serwitz submitted herewith, one of Plaintiffs' clients – the Sullivan & Serwitz 401 Profit Sharing Plan (the "S&S Plan") – stands ready, willing and able to assign its claims to Plaintiffs or join this action as a substitute and/or additional named plaintiff, whichever course of action the Court deems most appropriate. Furthermore, the S&S Plan's standing as beneficial owner

of Levitt Corporation stock purchased during the class period is indisputable.

Hence, certification is warranted. Apart from their standing arguments, defendants do not contend that the requirements for class certification are unmet.

Notably, regardless of how the Court rules on the standing issue – whether the Court certifies Plaintiffs as class representatives or requires a substitution or assignment – the substance of this lawsuit will remain the same. The named plaintiffs' claims will still involve the same shares and the same investment decisions, which were made by Plaintiffs who have already been prosecuting this action for two years. The issues raised by defendants amount to an exercise in the elevation of form over substance, which does not affect the outcome of the class certification determination.

**ARGUMENT**

**I.**
**CLASS CERTIFICATION SHOULD BE GRANTED**

**A.     This Court Should Adopt the Majority View, Which Holds that Investment Advisors with Discretionary Trading Authority And/or Authorization to Institute Legal Proceedings Possess the Requisite Standing**

The "vast majority" of courts, including every court to consider the issue in this district, hold that investment advisors with discretionary trading authority and/or authorization to litigate have standing to sue in connection with securities purchased for the accounts of their clients. *Miller v. Dyadic Int'l., Inc.*, No. 07-80948-cv, 2008 WL 2465286, at *9 (S.D. Fla. April 18, 2008); *see Newman v. Eagle Building Techs*, 209 F.R.D. 499, 506 (S.D. Fla. 2002) (appointing banks as lead plaintiffs in securities class action as the "[t]he fact that [they] bought the securities on behalf of clients does not mean that the banks are inadequate lead plaintiffs."); *see also Grand Lodge of Pennsylvania v. Peters*, 560 F. Supp. 2d 1270, 1272 (M.D. Fla. 2008) (holding that investment

2

advisor which attested that it had "full and complete discretion and authority to manage its

customers' accounts and to purchase securities on their behalf" had standing).[1]

As the court stated in *Dyadic*:

> The Court agrees with the majority of the district court decisions on
> this issue as well as the only Southern District of Florida court to
> address it.   The Court further agrees with the courts that have
> determined that "investment advisors with authority to make
> investment decisions for their clients are 'purchasers' for purposes of
> the securities laws such that they have standing."   In this case, as
> conceded [that] Capital Max is acting as attorney-in-fact for its clients
> [and] had full authority to make the purchase and sale of the Dyadic
> stocks in this case. Accordingly, the Court finds that Capital Max, as
> investment advisor to its clients, is the "purchaser" of the Dyadic
> stock in question in this case, with standing to sue in its own name,
> on its clients' behalf.

---

[1]         *See Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441-42 (W.D. Pa.
2001) (appointing an asset manager as lead plaintiff because of its unfettered decision making
authority, which made it a "purchaser" under the securities laws with standing to sue in its own
name); *In re Goodyear Tire & Rubber Co. Sec. Litig*, No. 5:03 CV 2166, 2004 WL 3314943, at *5
(N.D. Ohio May 12, 2004) (finding that an investment advisor had standing to sue based on a
declaration that "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them.
Capital Invest has full and complete authority to purchase and sell securities for each of the funds,
and to institute legal action on their behalf."); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291,
299 (D. Del. 2003) ("Although Defendants direct the Court to several cases supporting their position
that investment advisors lack standing to sue under the securities law, the Court observes that more
recent cases ... have concluded that investment advisors with the authority to make investment
decisions for their clients are 'purchasers' for purposes of the securities laws such that they have
standing."); *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 571-73 (D. N.J. 2006) (allowing a
plaintiff with power of attorney and full discretionary authority to serve as co-lead plaintiff);
*Lehocky v. Tidel Techs, Inc.*, 220 F.R.D. 491, 501 (S.D. Tex. 2004); *Roth v. Knight Trading Group,
Inc.*, 228 F. Supp. 2d 524, 529-30 (D. N.J. 2002) (holding that plaintiff's "status as an investment
adviser does not prevent it from serving as lead plaintiff."); *see also Employers-Teamsters Local
Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*,  498 F.3d 920 n.1 (9th Cir 2007)
(noting that "courts have found that an investment advisor has an interest in its own right to receive
full and fair disclosures regarding the true value of a company's stock, and therefore is a 'purchaser'
under the PSLRA with proper standing to pursue litigation on behalf of its individual clients.").  At
least one court has gone so far as to hold that full discretionary investment authority divests the
beneficial owner of standing. *See Congregation of the Passion, Holy Cross Province v. Kidder
Peabody & Co., Inc.*, 800 F.2d 177, 181 (7th Cir. 1986).

2008 WL 2465286, at *9 (citations omitted).

This Court should adopt the majority view, pursuant to which Plaintiffs indisputably have standing.  Indeed, the record shows that Plaintiffs' clients granted them full investment discretion and specific authority to sue.[2]  *See* Declaration of Robert E. Robotti in Support of Plaintiffs' Motion for Class Certification dated June 17, 2010 at ¶¶ 2-3 ("Robotti Decl."); Declaration of Robert J. Sullivan and Marshall Serwitz in Support of Plaintiffs' Motion for Class Certification dated June 17, 2010 at ¶¶ 2-3, Ex. A ("Sullivan-Serwitz Decl.") ("The Client hereby appoints R&CA as Client's agent and attorney-in-fact to bring and defend actions and proceedings at law or in equity or before any governmental, administrative or other regulatory agency, body, or commission ('Legal Proceedings'), with respect to Client's Account and/or the purchases, sales, or holdings of securities and other instruments therein.").

The record  also shows that Plaintiffs made the investment decisions in question without any involvement by their clients.  Robotti Decl. at ¶¶ 2-3; Sullivan & Serwitz Decl. at ¶¶ 2-3; Declaration of Mark A. Strauss in Further Support of Plaintiffs' Motion for Class Certification, dated June 18, 2010, Ex. A [Robotti deposition transcript at 53:6-10] ("The decision of acquiring the securities or not, the information on which we relied when we did that, was ours and we have an obligation to protect our clients' economics interests . . .").

---

[2]     Defendants insinuate that Plaintiffs somehow hid or disputed the fact that they were investment advisors.  This is untrue.  The Certifications of Named Plaintiff Pursuant to the Securities Laws filed by Plaintiffs in this case explicitly stated that Plaintiffs "manage[] the investments in question on a fully-discretionary basis" and are "authorized to act as attorney-in-fact with respect to the investments, and ha[ve] full authority to make all investment decisions as well as authority to bring suit to recover investment losses."  *Declaration of Jay W. Eng in Support of the Motion of Robotti & Company, LLC and Robotti & Company Advisors, LLC for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel and Liaison Counsel*, dated March 25, 2008, Ex. B, at pp. 13, 16 (Dkt. 10).

This is sufficient. *Huff* is not binding and does not represent the law in this Circuit.

**B.      Certification of the Proposed Class Would be Warranted Even if the Court Were Inclined to Follow *Huff***

Certification of the proposed class would be warranted even if this Court were inclined to follow *Huff* for two independent reasons.

**1.      Plaintiffs Can Cure Any Standing Defects and Should Be Permitted to Do So**

A named plaintiff's supposed lack of standing is not a basis for dismissal of a class action or denial of class certification. Courts simply cure the problem, by adding and/or substituting plaintiffs or permitting a real-party-in-interest to assign its claims to the original plaintiff. *See In re Herley Indus. Inc. Sec. Litig.*, Civil Action No. 06-2596, 2009 WL 3169888, at * n. 7 (E.D. Pa. Sept. 30, 2009) ("Notably, no court has dismissed a case based on a lead plaintiff's lack of standing. Instead, when courts have considered the existence of a standing problem for the lead plaintiff, those courts simply substituted appropriate plaintiffs."); *see e.g., Peters*, 560 F. Supp. 2d at 1273-74 (permitting amendment to add new lead plaintiff with standing to assert public-offering based claims and holding that such plaintiff's claims related back to original complaint); *In re Stone Energy Corp. Sec. Litig.*, Civil Action No. 05-2088, 2009 WL 528415, at *6 (W.D. La. Feb. 27, 2009) (denying motion to dismiss predicated on named plaintiff's lack of capacity and holding that "by amendment of the complaint or by intervention, the members of the original class will have an opportunity to name a new and proper class representative to enter the case and represent the interests of the subclass as 'real parties in interest.'").[3]

---

[3]      *See, e.g., Lynch v. Baxley*, 651 F.2d 387 n.1 (5th Cir. 1981) ("Efficient judicial administration weighs in favor of allowing an opportunity for a new and proper class representative to enter the case and litigate the interests of the subclass"); *In re Nat'l Australia Bank Sec. Litig.*,

(continued...)

This is consistent with Fed. R. Civ. P. 17(a)(3), which provides that:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Courts have responded to *Huff*-based challenges accordingly. In *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 609 F. Supp. 2d 938 (N.D. Cal. 2009), the court determined that, even if the investment-advisor plaintiff lacked standing under *Huff*, an "assignment of claims from one of [it]'s clients would . . . cure this deficiency." *Id*. at 942. It therefore granted the plaintiff leave to obtain such assignments and to amend the complaint accordingly. *Id*.[4]

The same thing occurred in *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 586 (S.D.N.Y.2009) (recognizing impracticability of reorganizing the litigation which had been ongoing for several years and permitting investment-advisor lead plaintiffs 30 days to amend

---

[3](...continued)
No. 03 Civ. 6537, 2006 WL 3844463, at *3 (S.D.N.Y. Nov. 8, 2006) ("courts not only may, but *should*, 'respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative'" (citation omitted)); *Alidina v. Penton Media, Inc.*, 143 F. Supp. 2d 363, 363-67 (S.D.N.Y. 2001) (permitting substitution of new plaintiffs and certifying class after original lead plaintiffs were found inadequate); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 380-81 (S.D.N.Y. 2000) (designating class representatives in addition to lead plaintiffs to ensure standing on all claims).

[4]    An assignment "gives a plaintiff standing to pursue an assignor's claims, even if the assignee will not receive any pecuniary gain from pursuing the action and would otherwise not have standing." *Herley*, 2009 WL 3169888, at *6; *see Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 128 S.Ct. 2531, 2533 (2008) (allowing assignee to bring suit, even though the assignee had agreed to remit any recovery to assignor); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 102 (2d Cir.2007) ("It is indeed commonplace for an assignee to institute or continue an action of his or her assignor on an assigned claim even though he or she, apart from the assignment, is without standing, and the court, apart from the assignment, would be without power to decide the case.").

complaint reflecting assignments of claims from beneficial owners).

Likewise, in *Herley*, the court certified the class because the lead plaintiff, an investment advisor, had obtained assignments of the subject claims from the two funds which it managed and which were the beneficial owners of the shares. 2009 WL 3169888, at *11. As the court stated, the advisor, Galleon, "stands before the Court today with valid assignments from the funds. Further, Galleon has been litigating this case for more than two years, and to appoint a new lead plaintiff at this late date would unduly disrupt the litigation process." *Id.* The court also observed that "[a]llowing Galleon to continue as lead plaintiff best serves the goals embedded in the PSLRA. Because investment advisers represent clients who often suffer the greatest loss among shareholders, the PSLRA tends to favor their appointment as lead plaintiffs." *Id.* at *10.

Here, any standing defect is also easily cured. The S&S Plan, one of Plaintiffs' clients, stands ready, willing and able to assign its claims to Plaintiffs or join the action as a substitute and/or additional named plaintiff, whichever course of action the Court deems most appropriate. Sullivan-Serwitz Decl. at ¶¶ 4-6.[5] Additionally, it is indisputable that the S&S Plan was the beneficial owner of Levitt stock purchased during the class period and that, as such, it has standing and is a class member. *Id.*, Ex. A.

As a result, the issues raised by defendants really are an attempt to elevate form over

---

[5]     Defendants may argue that an assignment of the S&S Plan's claims to Plaintiffs at this juncture would be ineffective, citing the notion that standing must exist from the date of commencement. As courts to have considered this issue have noted, however, "[c]lass actions . . . are treated differently due to the presence of multiple plaintiffs." *Herley*, 2009 WL 3169888, at *8; *see In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) ("none of the cases dealing with an assignment of a claim after litigation was commenced arise in the context of a lead plaintiff's standing in a PSLRA class action."). *Northstar*, *Herley* and *Vivendi* illustrate that courts routinely permit post-filing assignments in situations where, as here, the case was filed and the lead plaintiff was originally appointed prior to the decision in *Huff*.

substance.  This litigation will proceed seamlessly whether the Court certifies Plaintiffs as class representatives or requires a substitution or assignment.  In either case, defendants have already completed all the fact discovery they possibly could take concerning the circumstances of the subject investments – including the information relied on and the basis for the decisions – because Plaintiffs were the only ones involved.[6]

### 2.    Plaintiffs Have Article III Standing in Their Own Right

The "injury-in-fact" requirement of Article III does not necessarily require that the plaintiff have "legal title" to the claim.  Even as construed by the Second Circuit in *Huff*, it merely requires that the plaintiff have a "proprietary interest" therein.  549 F.3d at 108 ("the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim."); *see Herley*, 2009 WL 3169888, at *5 ("plaintiffs must have some type of proprietary interest in the claim they are litigating.") (citing *Sprint*, 128 S. Ct. 2531).

This constitutional requirement is satisfied by an investment advisor's interest in earning fees and maintaining the goodwill and future business of its clients.  As recognized by the court in *Dyadic*:

> Capital Max has alleged injury sufficient to meet the constitutional "injury in fact" requirement.  Capital Max has a "significant financial interest in attempting to recover [its clients losses] in order to maintain their goodwill and future business." *Ezra Charitable Trust*, 136 F. Supp. 2d at 443.  Further, as pointed out by Capital Max, it does in fact suffer direct financial losses as a result of its clients losses. Capital Max is a registered investment advisor, and as such it is compensated for its investment advice based on the performance and value of the portfolios under its management.  As a result, losses

---

[6]    On May 27, 2010, Plaintiffs produced more than 1,000 pages of documents to defendants in response to their discovery requests. In addition, on June 7, 2010, Plaintiffs' representative, Robert E. Robotti, sat for a two-hour deposition.

> to a client's portfolio directly translate into losses in income to
> Capital Max. . . . Accordingly, because Capital Max is a "purchaser"
> under the securities laws who has satisfied the minimum
> constitutional standing requirements, the Court finds that Capital Max
> has standing to pursue this action in its own name, on its clients'
> behalf.

*Id*. at *10.[7]

Here, Plaintiffs assert the same "injury in fact" as the investment advisor in *Dyadic*. *See* Robotti Decl. at ¶ 5. As such, they have Article III standing consistent with *Huff*, and should be entitled to pursue this action in their own names.[8]

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted. At minimum, the Court should permit plaintiffs to amend the complaint and/or its class certification papers in order to cure any standing-related defects that may be identified by the Court.

---

[7]     *See also Northstar*, 609 F. Supp. 2d at 942 ("Northstar would likely have standing to sue in its own right due to the direct financial injury it alleges that it suffered due to the decline in total value of assets under management.").

[8]     In *Huff*, the court did not even consider whether the "injury-in-fact" requirement could be satisfied by an investment advisor's interest in earning fees and maintaining the goodwill and future business of its clients. *Huff* is therefore not persuasive.

Dated: June 21, 2010                                       Respectfully submitted,


                                                           **BERMAN DeVALERIO**


                                           By:       /s/ Manual J. Dominguez
                                                     Manuel J. Dominguez (FBN 0054798)
                                                     mdominguez@bermandevalerio.com
                                                     Michael J. Pucillo (FBN 261033)
                                                     mpucillo@bermandevalerio.com
                                                     4280 Professional Center Drive
                                                     Suite 350
                                                     Palm Beach Gardens, FL  33410
                                                     Tel:     (561) 835-9400
                                                     Fax:     (561) 835-0322

                                           *Liaison Counsel and Attorney for Lead Plaintiffs*

                                                     **KIRBY McINERNEY LLP**
                                                     Daniel Hume, *pro hac vice*
                                                     dhume@kmllp.com
                                                     Ira M. Press, *pro hac vice*
                                                     Ipress@kmllp.com
                                                     Mark A. Strauss, *pro hac vice*
                                                     mstrauss@kmllp.com
                                                     825 Third Avenue, 16th Floor
                                                     New York, NY  10022
                                                     Tel:     (212) 371-6600
                                                     Fax:     (212) 751-2540

                                           *Lead Counsel and Attorney for Lead Plaintiff*s

## CERTIFICATE OF SERVICE

I, Manuel J. Dominguez, certify that on June 21, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner of those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                        /s/ Manuel J. Dominguez

                                                        Manuel J. Dominguez

*Robert D. Dance, et al., v. Levitt Corp., et al.*
**Case No. 08-60111-CIV-GRAHAM/McALILEY**

**SERVICE LIST**

Eugene E. Stearns
estearns@swmwas.com
Richard B. Jackson
rjackson@swmwas.com
Adam M. Schachter
aschacter@swmwas.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395
ECF Notification

*Attorneys for Defendants Levitt Corporation,
and Alan B. Levan*

Paul J. Geller
pgeller@rgrdlaw.com
David J. George
dgeorge@rgrdlaw.com
Jack Reise
jreise@rgrdlaw.com
ROBINS GELLER RUDMAN & DOWD
LLP
120 E. Palmetto Park Road
Suite 500
Boca Raton, FL 33432
Telephone: (561) 750-3000
Facsimile: (516) 750-3364
ECF Notification

*Attorneys for Robert D. Dance*

Manuel J. Dominguez
mdominguez@bermandevalerio.com
BERMAN DEVALERIO
4280 Professional Center Drive; Suite 350
Palm Beach Gardens, FL 33410
Telephone: (561) 835-9400
Facsimile: (561) 835-0322
ECF Notification

*Liaison Counsel and Attorney for Plaintiffs*

Samuel H. Rudman
srudman@rgrdlaw.com
David A. Rosenfeld
drosenfeld@rgrdlaw.com
ROBINS GELLER RUDMAN & DOWD
LLP
58 S. Service Road
Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
ECF Notification

*Attorneys for Robert D. Dance*

Daniel Hume, *pro hac vice*
dhume@kmllp.com
Ira M. Press, *pro hac vice*
ipress@kmllp.com
Mark A. Strauss
mstrauss@kmllp.com
KIRBY McINERNEY LLP
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540
ECF Notification

*Lead Counsel and Attorneys for Plaintiffs*